UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| MTP HOSPITALITY SOLUTIONS, INC. § § *Plaintiffs*, § § v. § § AFFILIATED FM INSURANCE § COMPANY, § § *Defendants*. § | CIVIL ACTION NO.: 7:23-CV-00099-DC |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR PROFESSIONAL FEES COVERAGE AND DEFENDANT'S VIOLATION OF CHAPTER 542 OF THE TEXAS INSURANCE CODE ON ITS UNDISPUTED PAYMENT

COMES NOW PLAINTIFF, MTP Hospitality Solutions, Inc. ("Plaintiff"), and submits this Motion for Partial Summary Judgment for Professional Fees Coverage and Violations of Chapter 542 of the Texas Insurance Code by Defendant, Affiliated FM Insurance Company, ("FM Global" or "Defendant") on its undisputed payment of policy benefits. Plaintiff seeks a determination by the Court that Defendant owes for coverage under the Professional Services Fees additional coverage and has violated Chapter 542 as evidenced as follows:

**I.**
**INTRODUCTION AND BACKGROUND FACTS**

Plaintiff was the owner of an Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Defendant. Plaintiff owned the insured property, a hotel, which is located at 117 West Wall Street, Midland, Texas 75701 (the "Property"). Plaintiff reported to Defendant losses when a catastrophic freeze storm damaged the Property. Defendant accepted Plaintiff's claim and that Plaintiff's Property had suffered covered damage, although it failed to timely scope

1

and pay for all necessary repairs and other policy benefits covered by the insurance policy in violation of the Texas Insurance Code. Based on these actions, Plaintiff filed suit.

Prior to Plaintiff filing suit, Plaintiff hired an engineer to determine the scope of the freeze damage so that it could present the amount of the policy benefits that would be required to properly address the damages. Plaintiff had already informed Defendant it did not agree with the amount of undisputed policy benefits Defendant finally paid months after the loss occurred. Thereafter, Plaintiff hired an electrician to aid the engineer and an accountant to assist in certifying the particulars of Plaintiff's business interruption loss. Defendant has wrongfully denied Plaintiff's request for coverage for these Professional Fees.

Rather than reasonably and timely investigate, scope and pay Plaintiff's claim as dictated by the Texas Insurance Code, Defendant failed to meet the timelines required by Chapter 542 of the Texas Insurance Code as described in more detail below on its own undisputed payment before the lawsuit was filed and before the appraisal. In summary, Defendant accepted liability for the loss, then delayed scoping and paying the damage – dragging out the process for over a **year and eight months** before finally paying the undisputed amount it admitted it owed. Defendant has admitted these fact.[1]

As set forth below, Plaintiff seeks a determination from the Court that Defendant owes coverage for Professional Fees incurred by Plaintiff, and a finding that Defendant violated Section 542.057 of the Texas Insurance Code. These issues are as a matter of law for this Court.

---

[1] *See* DKT. 6, pp. 3-4.

## II.
## UNDISPUTED FACTS

1. **Notice of Loss**: On February 16, 2021, Plaintiff gave Defendant notice of loss to the Property resulting from the catastrophic freeze storm.[2]

2. **Coverage Accepted**: On or about March 22, 2021, Defendant's adjusters inspected the Property and accepted coverage.[3] On May 6, 2021, Defendant paid Plaintiff an "advance" of $350,000.[4] No estimate was provided for the "advance."

3. **Investigation:** For the next year and five months, no undisputed claim payments were made by Defendant.[5] During this time, no scope of damages or estimates were provided to Plaintiff from Defendant.

4. **Undisputed Payment**: On February 2, 2022, over a year after it accepted coverage, Defendant finally estimated the undisputed amount owed for the dwelling as $1,571,348.45 replacement cost value and $623,359.38 actual cash value.[6] Defendant then paid the actual cash value amount (minus the deductible and advance payment) **over eight months later** on October 27, 2022, but did not pay any penalty.[7]

5. **Professional Fees:** On August 5, 2024, Plaintiff gave Defendant notice of its incurred professional fees.[8] On August 12, 2024, Defendant wrongfully denied coverage.[9]

---

[2] *Id.* at p. 3.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *See* Exhibit E
[9] *See* Exhibit F

III.

SUMMARY JUDGMENT EVIDENCE

Plaintiff requests the Court to take judicial notice of all documents on file incorporated by reference. Specifically, Plaintiff relies on the admissions and evidence in and attached to Defendant's Motion to Compel Appraisal, Document 6 et al as cited herein. Plaintiff also relies on the following:

- The Policy promulgated by Defendant, attached as Exhibit A;
- Invoices from Orlo Forensics, attached as Exhibit B;
- Invoice from OHMS Electrical Services, attached as Exhibit C;
- Invoices from Business Interruption Consulting, LLC, attached as Exhibit D;
- Email from counsel for Plaintiff to counsel for Defendant, attached as Exhibit E;
- Email from counsel for Defendant to counsel for Plaintiff, attached as Exhibit F;
- Documents produced by Defendant (AFM_001216), attached as Exhibit G;
- Documents produced by Defendant (AFM_004238), attached as Exhibit H;
- Documents produced by Defendant (AFM_004177-4184), attached as Exhibit I; and
- Affidavit of Shannon E. Loyd, attached as Exhibit J.

IV.

ARGUMENT & AUTHORITIES

A. **Professional Fees Coverage**

1. **Applicable Law**

Interpretation of a contract is for the court, not a jury. Insurance policies are subject to the general rules of interpretation and construction applicable to contracts.[10] Under Texas law, the primary goal in interpreting an insurance policy is to give effect to the written expression of the parties' intent.[11] To this end, the court reads all provisions within the contract as a whole and gives effect to each term so that no part of the agreement is left without meaning.[12]

---

[10] *State Farm Lloyds v. Page,* 315 S.W.3d 525, 527 (Tex. 2010); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003).
[11] *Page,* 315 S.W.3d at 527.
[12] *In re Serv. Corp. Int'l,* 355 S.W.3d 655, 661 (Tex. 2011); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 235 (Tex. 2003); *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex. 1998); *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 791-792 (Tex. App. Dallas 2011) citing *Farmers Enterprises, Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 107 (Tex. App.—Dallas 1996, no writ).

Also, terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that definitions are used to replace that meaning.[13] Importantly, the more specific provisions of a contract will control over the general provisions.[14]

2.  **The Policy provides coverage for Plaintiff's incurred professional service fees.**

The Policy's Professional Fees coverage is as follows:

> **23. Professional Fees**
>
> This Policy covers the reasonable and necessary expenses incurred by the Insured of:
> a) Auditors;
> b) Accountants;
> c) Architects;
> d) Engineers; or
> e) Other professionals; and
> f) The Insured's own employees,
>
> For producing and certifying particulars or details to determine the amount of loss payable under this Policy for which this Company has accepted liability.
>
> This coverage does not include the fees and expenses of attorneys, public adjusters, loss appraisers, loss consultants or any of their subsidiaries or related or associated entities.[15]

Defendant accepted liability for Plaintiff's claim on March 22, 2021.[16] Although it did so untimely, Defendant scoped and paid Plaintiff almost one million in policy benefits for the freeze damage to Plaintiff's Property.[17] Plaintiff informed Defendant it did not agree with the scope of damage determined by Defendant, nor the amount of the undisputed payment Defendant made on the claim.

Prior to filing a lawsuit, Plaintiff hired an engineer to scope in detail the freeze damage at the Property.[18] Plaintiff's engineer later determined that an electrician was necessary for it to properly detail the amount of the damage, so Plaintiff hired an electrician.[19] To determine the

---

[13] *W. Reserve Life Ins. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953); *Bituminous Cas. Corp. v. Maxey,* 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).
[14] *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133-34 (Tex. 1994).
[15] *See* Exhibit A, Bates' AFM_000688
[16] *See* Exhibit G
[17] *See* DKT. 6, p. 3; Exhibit H
[18] *See* Exhibits B and J
[19] *See* Exhibits C and J

amount of Plaintiff's business interruption loss, it retained a certified public accountant.[20] For these professional services, Plaintiff incurred fees.[21]

The Policy that Defendant promulgated provides coverage specially for Plaintiff's engineer fees and accountant fees.[22] The electrician that Plaintiff hired would fall under the "other professionals" required to determine the amount of loss payable. The Policy's Professional Fees coverage does not state that any fees would only be covered if incurred prior to a lawsuit.[23]

Plaintiff incurred $92,871.00 for engineer fees, $30,000.00 for accountant fees, and $7,967.00 for an electrician all in order to produce details to determine the amount of the loss Defendant should have paid for the freeze damage for which it accepted liability.[24] On August 5, 2024, Plaintiff through its counsel notified Defendant through its counsel of the covered incurred fees.[25] On August 12, 2024, Defendant denied the coverage.[26]

The Professional Fees coverage specifically applies to engineers and accountants and Plaintiff's electrician falls under the "other professionals" in the Policy. Plaintiff respectfully requests that the Court find that Plaintiff's Policy covers its incurred Professional Fees of $134,839.19 as shown in the invoices/receipts. Additionally, Defendant owes Plaintiff Chapter 542 penalties for failing to timely pay this coverage. Beginning the calculation from the August 12, 2024 denial, as of this filing the penalty would be $10,622.74 ($134,839.19 x 13.5% = $18,203.29/365 = $49.87 x 213 days).[27]

---

[20] *See* Exhibit D
[21] *See* Exhibits B, C, D, and J
[22] *See* Exhibit A, Bates' AFM_000688
[23] *Id.*
[24] *See* Exhibits B, C, D and J
[25] *See* Exhibit E
[26] *See* Exhibit F
[27] *Id.*

6

Because Defendant wrongfully denied such coverage, it also owes Plaintiff for attorneys' fees and costs of court. Plaintiff's counsel can confer with Defendant's counsel to attempt to reach an agreement on fees and costs of court if the Court grants Plaintiff's Motion. Should counsel be unable to reach an agreement, Plaintiff's counsel can submit an affidavit of fees and costs for the Court's determination.

**B.   Defendant violated Chapter 542 on its undisputed claim payment.**

**1.   Applicable Law**

Defendant is bound by the requirements of Chapter 542 of the Texas Insurance Code:

> Art. 21.42. TEXAS LAWS GOVERN POLICIES. Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby.

The Policy acknowledges the mandate in this statute:

**C. CONFORMITY TO STATUTE**

Terms of this Policy that conflict with the statutes of the jurisdiction where the insured property is located, are amended to conform to such statutes.[28]

To prevail under a claim for Texas Prompt Payment of Claims Act ("TPPCA") damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim.[29]

1.   Within fifteen business days after conducting its investigation, a surplus lines company must notify the policyholder of its decision to pay or deny the claim, or whether it

---

[28] *See* Exhibit A, Bates' AFM_000711
[29] *See Barbara Techs. Corp. v. State Farm Lloyds,* 589 S.W.3d 806, 819 (Tex. 2019); § 542.060(a); *Progressive Cty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam); *Allstate Ins. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001); *see also Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins.*, 795 F.3d 496, 505-06 (5th Cir. 2015); *Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 983-84 (5th Cir. 2015) (per curiam).

requires more information to make its decision.[30] If it decides to pay on the claim, it must do so within twenty business days.[31] If the insurance company has required more information in order to make a claim decision, it must pay or deny the claim within forty-five days after such notice.[32] The Fifth Circuit held that §542.056's reference to information "required by the insurer to secure final proof of loss" refers to information demonstrating that the insured in fact suffered a loss.[33] "[T]he extent of the loss is not determinative of § 542.056 and the fifteen-day acceptance/rejection deadline."[34]

Importantly, the TPPCA has a strict liability standard - there is no good faith defense to a claim under Chapter 542.[35]  The Texas Supreme Court held "[n]othing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline."[36] According to the Fifth Circuit citing *Barbara Techs*, "[t]hat court clearly treated the TPPCA as a strict liability provision…Put another way, **it is not necessary for a plaintiff to prove that the insurer acted wrongfully or in bad faith**…The statute requires only liability under the policy and a failure to comply with the timing requirements of the TPPCA."[37] A violation of Chapter 542 allows for the recovery of a penalty of five percent added to the interest rate determined under Section 304.003 of the Finance Code calculated per year, attorneys' fees and costs of court.[38]

Chapter 542 is to be liberally construed to promote the prompt payment of claims.[39]

---

[30] *See* TEX. INS. CODE §542.056
[31] *See* TEX. INS. CODE §542.057(c)
[32] *See* TEX. INS. CODE §542.056(d)
[33] *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 520 (5th Cir. 2015).
[34] *Id.*
[35] *State Farm Life Ins. v. Martinez,* 174 S.W.3d 772, 778 (Tex.App.– Waco 2005), *rev'd on other grounds,* 216 S.W.3d 799 (Tex. 2007)
[36] *Barbara Techs.,* 589 S.W.3d at 819
[37] *Agredano v. State Farm Lloyds,* 975 F.3d 504, 507 (5th Cir. 2020) (citations omitted) (emphasis added)
[38] *See* TEX. INS. CODE §542.060(c)
[39] *Id.* at 542.054

While the Policy does contain requirements for Plaintiff to follow, which it did, those requirements do not trump Defendant's duties under Chapter 542 of the Insurance Code. Defendant had a duty to Plaintiff to timely acknowledge, accept or deny and **pay** Plaintiff's claim.[40]

### 2. Defendant accepted coverage for the damages to the Property.

It is undisputed that the Plaintiff's Policy covers damage to the Property caused by a freeze storm.[41] It is further undisputed that on March 22, 2021, Defendant accepted the claim.[42] After subtracting the deductible and advance payment, Defendant undisputedly paid the actual cash value amount of $533,929.20 on October 27, 2022.[43] By its own admissions, Defendant failed to pay Plaintiff's claim as to the undisputed amounts it admitted it owed pursuant to 542.057 even considering the additional time provided by the State of Texas for the freeze claims.[44]

The undisputed, admitted evidence proves that the payment made by Defendant pursuant to its own scope of the damage was for covered policy benefits for which Defendant was liable. There is thus no factual dispute that Defendant is liable for the claim as to its undisputed payment under the Policy, meeting the first element of TPPCA liability.

### 3. Defendant violated the TPPCA with its late payment.

Over the year and eight months before Plaintiff finally received Defendant's undisputed claim payment after it accepted coverage as discussed above, Plaintiff was consistently requesting that Defendant provide it with Defendant's scope of the covered damages and

---

[40] *See* TEX. INS. CODE Sections 542.055, 542.056, 542.057
[41] *See* Exhibit A, Bates' AFM _000660, Section E 1.
[42] *See* Exhibit G
[43] *See* Exhibit H
[44] *See* https://www.tdi.texas.gov/bulletins/2021/B-0007-21.html *Commissioner's Bulletin # B-0007-21* referencing *Commissioner's Bulletin # B-0007-20* giving insurers an additional 15 days for payment of a freeze claim.

estimate.[45] It is without question Defendant's duty to comply with Chapter 542 including scoping and estimating any covered damages in a timely manner. If after an insurer's required undisputed payment was made the insured disagrees, then negotiating any additional amounts may occur. But nothing forecloses Defendant's duties to promptly pay what it admits it owes.[46]

There is no genuine factual dispute that Defendant violated the TPPCA by making payments untimely under the statute on the total undisputed portion of the claim as discussed above. According to section §542.056(a), a rejection or acceptance of the claim is the insurer's acknowledgment that it had all the information it needed from the claimant to determine whether the claimant was entitled to benefits under the policy.[47] This is what occurred on March 22, 2021, when Defendant accepted coverage.[48] Pursuant to Defendant's delay in the payment of the undisputed amounts it admitted it owed, its prompt payment penalties for Plaintiff's Property should be calculated from **May 11, 2021**.[49] The penalty owed by Defendant is currently 13.5% per annum.[50]

4. **Defendant is liable for a TPPCA penalty as a matter of law as to its undisputed amounts owed and paid on the Policy prior to litigation and appraisal.**

Calculating the TPPCA penalty Defendant owes on the $533,929.20 it paid on October 27, 2022 from May 11, 2021, Defendant owes Plaintiff **$105,454.67** (payment times 13.5% divided by 365 times 534 days) for its late undisputed payment.[51]

---

[45] *See, e.g.,* Dkt. 6-2
[46] *Barbara Techs.,* 589 S.W.3d at 819
[47] *Id.* at 816
[48] *See* Exhibit G
[49] 20 business days (statute) + 15 business days (extension)
[50] *See* TEX. INS. CODE §542.060(c)
[51] *See* Exhibit H

10

Plaintiff respectfully requests that the Court find Defendant violated Chapter 542 of the Texas Insurance Code as set forth above on its undisputed claim payment to Plaintiff and order Defendant to pay Plaintiff the TPPCA penalty payment.

5. **Pleading in the alternative, Defendant owes a TPPCA penalty for its delay between when it estimated and then paid its undisputed payment.**

Over a year after it accepted coverage, Defendant finally estimated the undisputed amount owed for the dwelling as $1,571,348.45 replacement cost value and $623,359.38 actual cash value on February 2, 2022.[52] Defendant then paid the actual cash value amount (minus the deductible and advance payment) over eight months later on October 27, 2022, but did not pay any penalty.[53]

Alternatively, if the Court does not find Defendant violated Chapter 542 as set forth in Sections B 1-4 above, Plaintiff respectfully requests that the Court hold that Defendant violated Chapter 542 by waiting 267 days to pay the admitted amount of actual cash value in undisputed policy benefits **it estimated** in February of 2022. The calculation would be as follows: $533,929.20 x 13.5% divided by 365 x 267 days = **$52,727.34** for Defendant's late undisputed payment.

6. **For violating Chapter 542, Defendant owes Plaintiff attorneys' fees and costs of court.**

Because Defendant violated Chapter 542, it owes Plaintiff for attorneys' fees and costs of court. Plaintiff's counsel can confer with Defendant's counsel to attempt to reach an agreement on fees and costs of court if the Court grants Plaintiff's Motion. Should counsel be unable to reach an agreement, Plaintiff's counsel can submit an affidavit of fees and costs for the Court's determination.

---

[52] *See* Exhibit I, dated 2-2-22
[53] *See* Exhibit H

## V.
### CONCLUSION AND PRAYER

Defendant FM Global wrongfully denied Plaintiff's claim for Professional Fees and violated Chapter 542 of the Texas Insurance Code when it failed to timely pay the undisputed policy benefits covered by the insurance policy that it admitted it owed. Therefore, Defendant is liable for the incurred fees presented by Plaintiff, penalty interest on its undisputed claim payment, attorneys' fees and costs of court, by law and/or by good cause shown herein. FOR THESE REASONS, Plaintiff prays the Court will grant Plaintiff's Motion and enter a finding that Defendant has wrongfully denied coverage for Professional Fees and violated Chapter 542 and other findings as outlined above.

Respectfully submitted,

By: _____

SHANNON E. LOYD
State Bar No. 24045706
ROBERT A. POLLOM
State Bar No. 24041703
LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
(210) 775-1424
Email: shannon@lp-lawfirm.com
       robert@lp-lawfirm.com

Charles King
Texas Bar Number 1436525
101 South Park Street
San Angelo, Texas 76901
Telephone: 325-227-6536
Charles@charleskinglaw.com

> Ed Conley
> Texas Bar Number 04664100
> 633 Sayles Blvd
> Abilene, Tx. 79605
> Telephone: 325-698-4708
> Facsimile: 325 690 0012
> Edconley18@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of *Plaintiff's Motion for Partial Summary Judgment for Professional Fees Coverage and Defendant's Violations of Chapter 542 of the Texas Insurance Code* was served on the attorney in charge for Defendant by electronic filing pursuant to the Federal Rules of Civil Procedure, on this 13th day of March 2025.

_____
SHANNON E. LOYD